**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **NO. 1:26-cr-00385-DAE** |
| | § | |
| **RYAN THOMAS GRIFFIN** | § | |

## MOTION TO DISMISS INDICTMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE DAVID A. EZRA:

NOW COMES Defendant Ryan Thomas Griffin, through undersigned counsel, and files this Motion to Dismiss Indictment. The Government filed a four-count indictment against Mr. Griffin for allegedly violating 18 U.S.C. § 875(c). *See* Docket No. 27. Mr. Griffin moves this Court to dismiss each count of the indictment because each seeks to prosecute him for constitutionally protected speech under the First Amendment. No count alleges a true threat. Mr. Griffin's statements were on a matter of public concern and are entitled to special protection under the First Amendment. Further, Mr. Griffin moves to dismiss Counts One through Four because § 875(c) is unconstitutionally vague and overbroad. The prosecution violates the Fifth Amendment's Due Process Clause because it deploys a threat statute that is void for vagueness. The statute fails to give a person of ordinary intelligence notice of what conduct is forbidden as it provides no fair warning of what statements will qualify as criminal threats. *Pappachristou v. Jacksonville*, 405 US. 156 (1972). In support of his motion, Mr. Griffin shows as follows:

## FACTUAL BACKGROUND

The Government filed an Indictment on July 21, 2026, alleging that four statements made in the course of 15 months violated 18 U.S.C. § 875(c), Interstate Transmission of Threatening Communications. The charges arise from statements allegedly published on the social media

platform Gab between March 2025 and June 2026. *See* Docket No. 27. Gab is a far-right online social media platform founded in 2016 and marketed as a "free speech" alternative to mainstream networks like X (formerly Twitter) and Facebook.[1] Gab claims to promote free speech, individual liberty, the "free flow of information online," and Christian values.[2]

According to the Indictment, Mr. Griffin maintained a publicly accessible account on Gab under the username "PoisonDartPepe." *See* Docket No. 27. Over approximately 15 months, Mr. Griffin published approximately 90,000 posts on Gab discussing political, social, and personal grievances. The indictment alleges that four of those posts constitute interstate threats in violation of 18 U.S.C. § 875(c). Specifically, Count One alleges as a threat the following post Mr. Griffin made on June 20, 2026:

> *"I'm just a random nobody in the US and I can pick any synagogue I want and go postal on it and the president will be visiting the place the next week to pay respects to his real masters. Your theater kid shit will be easy to play and as soon as I get an organized group of men willing to act on it we are going after your ass zog trash. I don't care about trump, and I wouldn't even live to see him there most likely assuming l jihaded any place, but the team would have all your moves laid out in advance and they'd be waiting. The first attack would just be the bait. And then we'd hit you again at the funeral once the more important people showed up to grift.* "[3]

The indictment alleges as Count Two this post from June 7, 2026:

> *"Zionists do not have the authority to lecture me on sexual morals or anything else. They're criminals and I am going to kill them.* "[4]

The basis of Count Three is a post from January 23, 2026:

> *"If I'm NEVER getting a family or a house in shithole America what else do I have to do better than KILL my state representatives? God that sounds awesome. I want them to die*

---

[1] https://www.pewresearch.org/short-reads/2023/01/24/key-facts-about-gab/

[2] https://en.wikipedia.org/wiki/Gab_(social_network)

[3] Counts One and Two additionally include "Special Findings" alleging that the communications targeted individuals because of their actual or perceived religion for purposes of U.S.S.G. § 3A1.1. *See* Docket No. 27. Mr. Griffin filed a Motion to Strike Surplusage on July 31, 2026. *See* Docket No. 34. In that pending Motion, Mr. Griffin urges the Court to strike the "Special Findings" as surplusage. The language in the "Special Findings" is irrelevant, inflammatory, and prejudicial. *Id.*

[4] *Id.*

*so bad. Like I'm looking up what is their schedule, where are they and when so I can potentially kill them. That's how FUCKING PISSED I am about America ripping me off*"

The basis of Count Four is a post from March 5, 2025:

> *"My goal for the next 10-20 years is to get hot girl I can have kids with, 10 acres of land to live on, stable income to support my fami{v. And if I can't get that as upper middle class white collar educated heritage US guy then I am going to attack the federal government and kill their employees or the US military. Right now - looking like terrorism is my better option. I like the JD vance meme. It's not a joke for me. We are going to fucking kill you. You are going to make this deal available to me or I am going to start building bombs.*"

Four months after they began investigating the online activity, FBI agents went to Mr. Griffin's home in Austin, Texas and spoke with him in person. Mr. Griffin consensually and voluntarily spoke with the agents, acknowledged ownership of the Gab account, answered the agents' questions, and cooperated with the investigation. During the interview, Mr. Griffin discussed the online statements and his political and personal frustrations. After a two-hour conversation in Mr. Griffin's living room, the agents left. Mr. Griffin was not arrested. On June 30, 2026, the Government filed a Criminal Complaint charging Mr. Griffin with violations of 18 U.S.C. § 875(c). *See* Docket No. 1. Mr. Griffin appeared before United States Magistrate Judge Susan Hightower for a preliminary and detention hearing. Defense counsel filed a Brief in Support of a Finding of No Probable Cause and letters from Mr. Griffin's mother and twin brother. *See* Docket Nos. 18, 20. After a two-part hearing, Judge Hightower found probable cause and ordered Mr. Griffin detained pending trial. *See* Docket Nos. 21, 22. Defense counsel filed a Motion to Revoke Detention Order seeking de novo review of the detention order pursuant to 18 U.S.C. § 3145(b). *See* Docket No. 24. The Court set this Motion for a hearing on August 28, 2026. *See* Docket No. 35.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.

An indictment should be dismissed if the specific facts alleged in the charging document do not, as a matter of law, satisfy the elements of the offense. *See United States v. Paranella*, 277 F.3d 678, 685 (3d Cir. 2002) *abrogated on other grounds by Skilling v. United States*, 561 U.S. 358, 410 (2010)) ("[A] charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation."); *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).

Where, as here, a person's speech is at issue, the determination of whether a person's speech is a "true threat" falls appropriately in the hands of the Court where the facts are undisputed. *United States v. O'Dwyer*, 443 F. App'x 18, 20 (5th Cir. 2011) (affirming dismissal of indictment because plain language of alleged threat did not constitute a threat under § 875(c)); *United States v. Alkhabaz*, 104 F.3d 1492, 1493 (6th Cir. 1997) (concluding that the indictment failed, "as a matter

of law," to allege violations of § 875(c)); *United States v. Miah*, 120 F.4th 99, 107 (3d. Cir. 2024) (reviewing denial of motion to dismiss arguing communications were not "true threats"); *United States v. Lincoln*, 403 F.3d 703, 705-06 (9th Cir. 2005);*United States v. Bly*, 510 F.3d 453, 457 (4th Cir. 2007) (reviewing order on motion to dismiss as political hyperbole rather than true threat); *United States v. Francis*, 164 F.3d 120, 123 n.4 (2d Cir. 1999) (describing "question of whether a defendant's communication is a true threat rather than speech protected by the First Amendment" as threshold question of law for the court) (citations omitted); *Bose Corp. v. Consumers Union of U.S., Inc*., 466 U.S. 485, 510–11 (1984) ("[Judges]—and particularly Members of this Court—must exercise such review in order to preserve the precious liberties established and ordained by the Constitution."). An indictment "must include sufficient context for the District Court "to determine that a reasonable jury could find that [the charged] statement expressed an intent to injure in the present or future." *Miah*, 120 F.4th at 107.

It is true that the Fifth Circuit has reversed the dismissal of an indictment alleging violations of Section 875(c). *United States v. Burger*, 170 F.4th 395, 406 (5th Cir. 2026). But it did so because of what the Court deemed to be a critical disputed fact question for the jury in that case: whether the role-playing environment of an online avatar-based gaming platform affected whether a reasonable player would believe the defendant's statements were role-playing or sincere. *Id.* at 405. Here, there is no such underlying disputed context for the jury to decide. Because the essential facts are undisputed, the Court may appropriately decide the motion as a matter of law. *See Watts v. U.S.*, 394 U.S. 705 (1969) (holding as a matter of law that defendant's statement was not a true threat).

**ARGUMENT**

The indictment should be dismissed because Mr. Griffin's speech is protected by the First

Amendment and, alternatively, because the statute is unconstitutionally vague and overbroad.

## I. The indictment should be dismissed because, in their undisputed context, Mr. Griffin's statements are not true threats and are protected by the First Amendment.

As a threshold matter, this case does not involve what made dismissal of an indictment charging violations of Section 875(c) inappropriate in *Burger*: a disputed context. *Burger*, 170 F.4th at 405. Specifically, in that case, the parties disagreed about how the context there—an online avatar-based role-playing game—affected the true threats analysis. *Id.* But here, the context is undisputed: Gab is a social media posting platform like any other, presenting as straightforward and undisputed a factual context as making a political statement at a public rally, *Watts*, 394 U.S. at 706, or in an internet chat room, *United States v. Morales*, 272 F.3d 284, 285-86 (5th Cir. 2001), or on Facebook, *Elonis v. United States*, 575 U.S. 723, 726 (2015), or on an Internet message board, *United States v. Bagdasarian*, 652 F.3d 1113, 1115 (9th Cir. 2011)

The indictment should be dismissed because Mr. Griffin's statements are protected by the First Amendment. The First Amendment states in relevant part, "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. Indeed, the First Amendment protects speech even when the subject or manner of expression is uncomfortable or unconventional. The "bedrock principle underlying the First Amendment" is "that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas* v. *Johnson*, 491 U.S. 397, 414 (1989). "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger* v. *Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Rather, a "hallmark" of free speech is "to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (quoting *Abrams v. United States*, 250

U.S. 616, 630 (1919) (Holmes, J., dissenting)).

The First Amendment permits restrictions upon the content of speech only in a few limited areas. *Counterman v. Colorado*, 600 U.S. 66, 73 (2023). One such category of unprotected speech is "true threats" of violence. *Id.* In order to be a "true threat," the statement, "when taken in context," must convey a real possibility that violence will follow. *Id.* at 74. This distinguishes a "true threat" from jests or hyperbole. *Id.* True threats are "serious expressions" conveying that the speaker means to "commit an act of unlawful violence." *Id.* (quoting *Black*, 538 U.S. at 359).

For a communication to be a true threat under § 875(c), the Fifth Circuit requires that the speech "in its context would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (quoting *United States v. Myers,* 104 F.3d 76, 79 (5th Cir.1997)); *see also Burger*, 170 F.4th at 401 (describing requirement that objectively reasonable person would interpret the speech as "a serious expression of intent to cause a present or future harm") (internal quotations omitted). The objective component of Section 875(c) shields individuals from culpability for communications that are not threatening to a reasonable person, distinguishing true threats from hyperbole, satire, or humor." *United States v. Towery*, No. SA-20-CR-342-XR, 2022 WL 789332, at *3 (W.D. Tex. Mar. 14, 2022). The key to distinguishing "true threats" from speech protected by the First Amendment is if the alleged threat had an "immediacy, or clarity of purpose." *Shackelford v. Shirley*, 948 F.2d 935, 939 (5th Cir. 1991).

Here, the indictment fails the objective prong. An objectively reasonable person would not believe the statements were a serious expression of intent to cause present or future harm because of their undisputed context—on a public social media platform—and content: hyperbolic, conditional, and abstract. It is true that some public statements not directed at any intended victim

may still be true threats. It is also true that some conditional statements lacking in specificity or detail may nonetheless be true threats. But in this case, the four statements, directed at no victim and with no particulars, are vague hyperbolic rants protected under the First Amendment.

**A. *In the undisputed context in which the four statements were made, an objectively reasonable person would not conclude that threatened violence would follow.***

The undisputed context in which Mr. Griffin made the charged statements strongly weighs against treating them as true threats. As alleged in the indictment, the undisputed context is that the statements were publicly accessible postings on Gab, an online social media platform. Mr. Griffin did not send the communications privately to a particular victim, government official, military member, synagogue, or other identified person. Rather, the statements appeared among approximately 90,000 posts that Mr. Griffin made publicly on Gab over approximately 15 months. The Government selected four statements from that substantial body of online commentary and charged them as federal crimes.

The charged statements are part of an extended and public stream of commentary rather than a series of direct communications to identified victims. That distinction matters. Mr. Griffin's posts were not accompanied by a demand delivered to a particular person, an instruction to a particular person to take protective action, or a communication notifying an identified victim that Mr. Griffin intended to harm them. Instead, the posts appeared on a public discussion platform and addressed broad political, social, and personal grievances. *See United States v. Weiss*, No. 20-10283, 2021 WL 6116629, at *2 (9th Cir. Dec. 27, 2021) (reversing dismissal of indictment where private communication personally targeted an individual). No particular target was identified, which distinguishes this case from those in which a public official, for example, receives a specific threat. *See United States v. Nformangum*, No. 24-20515, 2026 WL 18900, *4 (5th Cir. Jan. 2, 2026) (true

threat where defendant left voicemail for Senator Cruz describing public knowledge of address and that it is the civic duty of every American citizen to kill him and his colleagues); *United States v. Muller*, No. 25-10429, 2026 WL 737343, at *2 (5th Cir. Mar. 16, 2026) (statements sufficiently concrete where defendant repeatedly threatened harm specifically and directly to a specific agent and his family). This undisputed context weighs against the conclusion that Mr. Griffin was communicating a serious expression that he would personally carry out unlawful violence.

None of this makes Mr. Griffin's rhetoric acceptable. It does, however, place the rhetoric outside the scope of true threats and within the ambit of public square speech the First Amendment is meant to protect. *Watts*, 394 U.S. at 706 (public rally); *Bagdasarian*, 652 F.3d at 1115 (social media); *White*, 670 F.3d at 498 (public website).

**B. *The statements are hyperbolic hypotheticals devoid of specifics, not true threats.***

"Hypothetical and conditional" statements are not true threats as a matter of law. *United States v. O'Dwyer*, 443 F.App'x 18, 20 (5th Cir. 2011). Rather, to be a true threat, the statement must be so "unequivocal, unconditional, immediate, and specific as to the person threatened as to convey a gravity of purpose and imminent prospect of execution." *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976).

A certain level of specificity about key details is required for a true threat. That specificity may include a particular target, like a particular named individual. *See United States v. Nformangum*, No. 24-20515, 2026 WL 18900, *4 (5th Cir. Jan. 2, 2026) (true threat to Ted Cruz); *United States v. Muller*, No. 25-10429, 2026 WL 737343, at *2 (5th Cir. Mar. 16, 2026) (true threat to specific agent and his family). Where a particular individual is not named, a true threat may instead describe individuals at a precise location. *See United States v. Cox*, 957 F.2d 264, 266 (6th Cir. 1992) (true threat where caller to bank stated that he was planning to go to that

bank and hurt people); *Morales*, 272 F.3d 284, 286 (5th Cir. 2001) (true threat naming teachers and students at Milby High School). Where no particular individual or precise location are named, a specific date of attack is relevant to the true threats analysis. *Burger*, 170 F.4th at 399 (2026) (describing communication listing month of April).

Furthermore, abstract statements about "planning" are not equivalent to a "true threat." *See United States v. Baker*, 890 F. Supp. 1375, 1386 (E.D. Mich. 1995), *aff'd sub nom. United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997) ("Section 875(c) ... does not address planning crimes, per se, but transmitting threats to injure or kidnap"). Statements that encourage violence are insufficient if they do not "create apprehension that [the statement's] *originator* will act according to its tenor." *Morales*, 272 F.3d at 287 (emphasis added).

Indeed, to constitute a "true threat," a communication must constitute a "serious expression" "conveying that [the] speaker means to 'commit an act of unlawful violence." *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). "[A] listener's subjective reaction, without more, should not be dispositive of whether a statement is a true threat ... [because] whether a particular reader or listener will react with fear to particular words is far too unpredictable a metric for First Amendment protection." *United States v. Twitty*, 859 F. App'x 310, 318 (10th Cir. 2021).

The four statements in the indictment are not true threats because they are hypothetical, conditional, and non-specific. In the statement charged in Count One, hypothetical future action was made conditional on getting "an organized group of men willing to act on it." But there is neither a statement nor an allegation that such a group existed. An exhortation to the public to take action is not a true threat. *United States v. White*, 670 F.3d 498, 513 (4th Cir. 2012). The statement

then further describes this hypothetical future in hypothetical language: “assuming” he took a given step, an action “would be” taken, and the hypothetical organized group “would” take another step. The statement thus describes a hypothetical scenario in the nature of a thought experiment.

In addition to being entirely conditional and hypothetical, Count One lacks any particularity that would make an objectively reasonable person believe that the hypothetical threatened violence would occur. It refers generally to "any synagogue" and to "your ass zog trash." It does not identify any location Mr. Griffin purportedly intended to attack. It does not identify a particular victim. It does not provide a particular date on which the attack would occur.

Count Two is even less particularized. Mr. Griffin wrote, "Zionists do not have the authority to lecture me on sexual morals or anything else. They're criminals and I am going to kill them." The Government does not allege that Mr. Griffin directed this statement to any particular Zionist, identified a particular person as his intended victim, or provided any time, place, or method for carrying out the alleged threat. The statement instead uses "Zionists" as a broad and undefined category. Whatever one thinks of the language, the statement contains no location, date, or other circumstance from which a reasonable reader could determine that a particular person was being notified of an impending act of violence.

Count Three is hyperbolic rhetoric lacking in specifics. Mr. Griffin writes that he is so “pissed” about “America ripping me off,” asking the rhetorical question based on a condition: “If I’m never getting a family or a house in shitthole America what else do I have to do better than kill my state representatives?” He describes looking up information about these representatives as a way to describe “how fucking pissed I am.” But the charged communication does not identify a particular representative, provide a date or location for an attack, or communicate directly with any

representative. Nor does the Indictment allege that any state representative received the communication. The statement instead appears as part of a broader expression of anger about Mr. Griffin's dissatisfaction with his circumstances and his perception that "America" was "ripping [him] off." *Id.* The statement contains violent rhetoric, but the question under the First Amendment is not whether the language is offensive or alarming. The question is whether an objectively reasonable person believes the statement seriously expresses that its originator will act according to its tenor. *Morales*, 272 F.3d at 287; *see also Burger*, 170 F.4th at 401.

Count Four is similarly conditional, abstract, hypothetical, and hyperbolic. It begins with a discussion of Mr. Griffin's desire to obtain a family, land, and stable employment in the next one to two decades and then posits a hypothetical consequence if those aspirations were not achieved: "if I can't get that . . . then I am going to attack the federal government and kill their employees or the US military." The statement then shifts to "looking like terrorism is my better option" and concludes with "I am going to start building bombs." The language is undoubtedly disturbing. But it is, on its face, an extended statement of grievance, framed around a series of hypothetical future circumstances and directed toward an amorphous class of people. Count Four expressly conditions the threatened conduct on events occurring over the next "10-20 years" and on Mr. Griffin's failure to obtain a family, land, and stable income. The statement does not say that he was going to attack the federal government at a particular time or place. It describes a contingent future course of conduct dependent upon circumstances that may or may not occur over a period of years. It refers to "the federal government," "their employees," and "the US military." It identifies no person, no facility, no unit, no location, and no date. It also places the alleged violence on a conditional timeline of "the next 10-20 years."

None of these statements is a true threat or an unequivocal communication that violence is

about to occur. They instead present hypothetical possibilities, future contingencies, and imagined courses of conduct. Statements that are hypothetical, hyperbolic, jest, political rant, conditional, and nonspecific are, however objectionable their content, protected by the First Amendment. *See O'Dwyer*, 443 F. App'x at 20. That context distinguishes Mr. Griffin's statements from a communication in which a speaker possesses the means, identifies a victim, selects a time and place, and announces an intention to carry out violence. Nothing in the Indictment alleges such facts. There is no identified organization, no identified co-conspirator, no scheduled attack, no identified synagogue, no identified federal employee, no identified military installation, and no identified state representative who received a communication from Mr. Griffin announcing an impending attack.-Thus, although the charged statements contain violent language, they lack the concrete features that would transform generalized violent rhetoric into a serious expression that violence will occur. Offensive rhetoric is not the constitutional equivalent of a true threat.

## II. Alternatively, Counts One through Four must be dismissed because Section 875(c) is unconstitutionally vague and overbroad.

Alternatively, Section 875(c) is void for vagueness and unconstitutionally overbroad. A criminal statute is void for vagueness if the conduct it prohibits is not clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). A criminal statute is unconstitutionally vague if it (1) "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden," *United States v. Harriss*, 347 U.S. 612, 617 (1954), or (2) "encourages arbitrary and erratic arrests and convictions." *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). Fair notice for people "of common intelligence" is the "first essential of due process." *United States v. Davis*, 588 U.S. 445, 451 (2019) (cleaned up). This serves the separation of powers, requiring that crimes be clearly defined by Congress, not unelected "police officers, prosecutors, juries, and

judges." *Sessions v. Dimaya*, 584 U.S. 148, 155–56 (2018). Importantly, "standards of permissible statutory vagueness are strict in the area of free expression," meaning Congress may regulate in the realm of the First Amendment "only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 432–32 (1963).

Because § 875(c) implicates First Amendment freedoms, a heightened standard of scrutiny applies. For a challenge based on the First Amendment, courts may consider whether the statute is unconstitutionally vague on its face. *United States v. Williams*, 553 U.S. 285, 304 (2008). In the First Amendment context, a statute is overbroad when "it is unclear whether it regulates a substantial amount of protected speech." *Id.* Section 875(c) is unconstitutionally vague because it fails to provide a person of ordinary intelligence fair notice of what speech is prohibited. While a scienter requirement "may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed," *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982), a statute that fails to include any scienter requirement lays "a trap for those who act in good faith." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979). In *Counterman*, the Supreme Court held that in prosecutions of true threats the government must prove that "the defendant had some understanding of his statements' threatening character." 600 U.S. at 73. But 18 U.S.C. § 875(c) provides no such notice of this requirement. This omission from the statute chills the exercise of First Amendment freedoms.

Furthermore, in the context of laws criminalizing pure speech[5], the reckless *mens rea* is

[5] In *Counterman*, the defendant was convicted under a Colorado stalking statute which made it unlawful to "[r]epeatedly ... make[ ] any form of communication with another person" in "a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress." 600 U.S. at 70. The statute of conviction applies to someone who "[r]epeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person ... in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... serious emotional distress." *Id.* at 86 n. 1 (Sotomayor, J., concurring).

unconstitutionally vague. In her concurrence in *Counterman*, Justice Sotomayor stated:

> I agree with the Court's conclusion that the First Amendment requires a subjective *mens rea* in true-threats cases, and I also agree that recklessness is amply sufficient for this case. Yet I would stop there, leaving for another day the question of the specific *mens rea* required to prosecute true threats generally. If that question is reached, however, the answer is that true threats encompass a narrow band of intentional threats. Especially in a climate of intense polarization, it is dangerous to allow criminal prosecutions for heated words based solely on an amorphous recklessness standard. Our society has often concluded that an intent standard sets a proper balance between safety and the need for a guilty mind, even in cases that do not involve the First Amendment. Surely when the power of the State is called upon to imprison someone based on the content of their words alone, this standard cannot be considered excessive.

600 U.S. at 104–05 (Sotomayor, J., concurring).

The charges Mr. Griffin faces are the exact situation to which Justice Sotomayor refers: he faces prosecution for pure speech about political subjects in a climate of intense political polarization. As Justice Sotomayor recognized, "[t]he risk of overcriminalizing upsetting or frightening speech has only been increased by the internet." *Id.* at 87. That Section 875(c) requires only a reckless *mens rea* renders the statute unconstitutionally vague. A "determination of when angry hyperbole crosses the line will depend on amorphous norms around language, which will vary greatly from one discursive community to another." *Id.* at 88. Such a standard does not provide fair notice of what type of speech is prohibited, particularly in the context of statements made to public officials about their role in the government. Section 875(c) is also unconstitutionally overbroad. "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.,* 535 U.S. 234, 255 (2002). Criminal statutes, like the one at issue here, "must be scrutinized with particular care." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 459 (1987). The Supreme Court has held "[t]he First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges." *Virginia v. Hicks*, 539 U.S. 113, 118 (2003). "The showing that a law punishes a substantial amount of

protected free speech, judged in relation to the statute's plainly legitimate sweep suffices to invalidate *all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Id.* at 118-19 (cleaned up). Thus, criminal statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.*

Section 875(c) is unconstitutionally overbroad because it prohibits a substantial amount of protected speech. If the Court interprets § 875(c) to prohibit the statements alleged in the indictment, which involve statements of generalized grievance referencing non-specific groups of people on online, public forums, then § 875(c) is overbroad. Put simply, statements relating to any matter of political, social, or other concern of the community are protected by the First Amendment. *Phelps*, 562 U.S. at 452. Section 875(c) is unconstitutionally vague and overbroad, and Mr. Griffin moves to dismiss the Counts One through Four of the Indictment.

**Conclusion**

For all the reasons stated above, the prosecution of Mr. Griffin violates the First Amendment. For the foregoing reasons, Mr. Griffin respectfully asks the Court to dismiss the Indictment. *See* Docket No. 27.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ RUBEN PENA, JR.
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24072983

/s/ HORATIO ALDREDGE
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24064026

*Attorneys for Ryan Thomas Griffin*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Matt Devlin
United States Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, TX 78701

/s/ RUBEN PENA, JR.

/s/ HORATIO ALDREDGE

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **NO. 1:26-cr-00385-DAE** |
| | § | |
| **RYAN THOMAS GRIFFIN** | § | |

**O R D E R**

On this date, the Court considered Defendant's Motion to Dismiss Indictment. The Court, having considered the motion, is of the opinion that the motion should be granted.

IT IS THEREFORE ORDERED THAT the Defendant's Motion to Dismiss is hereby **GRANTED.** The Indictment is HEREBY DISMISSED.

SIGNED this ___________ day of _______________________, 2026.

_______________________________________
DAVID EZRA
UNITED STATES DISTRICT JUDGE