**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| **v.** | § | CRIMINAL NO. A-26-CR-385 DAE |
| | § | |
| **RYAN THOMAS GRIFFIN,** | § | |
| | § | |
| **Defendant.** | § | |

# UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT

The United States hereby files its Response in Opposition to Defendant's Motion to Dismiss Indictment (ECF 39) and, for the reasons which follow, respectfully requests the Court to deny the Motion.

Defendant raises two claims in his motion. First, Defendant claims that Defendant's statements were not in fact "true threats," but were merely "statements … on a matter of public concern" which are protected under the First Amendment. (ECF 39 at 1.) Second, Defendant claims that the statute Defendant is charged with violating, Title 18, United States Code, Section 875(c), is void for vagueness under the Fifth Amendment Due Process clause in that it provides no fair warning of what statements qualify as criminal threats. (ECF 39 at 1.)

Because neither of Defendant's claims have merit, Defendant's Motion should be denied.

## Statement of the Case

On July 21, 2026, a federal grand jury sitting in Austin, Texas, returned a four-count indictment charging Defendant in each count with Interstate Transmission of Threatening

Communication in violation of 18 U.S.C. § 875(c). Each of the alleged threats were posted on Gab, a social media platform. The alleged threats charged in each count are as follows:

Count One:

> *I'm just a random nobody in the US and I can pick any synagogue I want and go postal on it and the president will be visiting the place the next week to pay respects to his real masters. Your theater kid shit will be easy to play and as soon as I get an organized group of men willing to act on it we are going after your ass zog trash. I don't care about trump, and I wouldn't even live to see him there most likely assuming I jihaded any place, but the team would have all your moves laid out in advance and they'd be waiting. The first attack would just be the bait. And then we'd hit you again at the funeral once the more important people showed up to grift.*

Count Two:

> *Zionists do not have the authority to lecture me on sexual morals or anything else. They're criminals and I am going to kill them.*

Count Three:

> *If I'm NEVER getting a family or a house in shithole America what else do I have to do better than KILL my state representatives? God that sounds awesome. I want them to die so bad. Like I'm looking up what is their schedule, where are they and when so I can potentially kill them. That's how FUCKING PISSED I am about America ripping me off.*

Count Four:

> *My goal for the next 10-20 years is to get hot girl I can have kids with, 10 acres of land to live on, stable income to support my family. And if I can't get that as upper middle class white collar educated heritage US guy then I am going to attack the federal government and kill their employees or the US military. Right now - looking like terrorism is my better option. I like the JD vance meme. It's not a joke for me. We are going to fucking kill you. You are going to make this deal available to me or I am going to start building bombs.*

This case is currently set for jury selection and trial on September 21, 2026.

## Statement of Facts

Beginning in or about February 2026, FBI received several reports and tips that a user on the Gab social media platform known as "PoisonDartPepe" posted numerous threating statements. FBI ultimately determined that the postings were made by Defendant Ryan Thomas GRIFFIN.

Defendant, as Gab user PoisonDartPepe, made tens of thousands of Gab posts beginning in or about 2018, many of which directed hatred and vitriol toward certain groups and individuals and also discussed actively engaging in violence toward them. In addition to the postings charged as true threats in the Indictment, Defendant, a.k.a. PoisonDartPepe, posted the following violence-related statements on Gab in February 2026:

- *You know what I need is warriors and a team. If I had even a squad of guys, even like a dozen, that increases my threat level and force multiplier by an order of magnitude. Lone wolf stuff is cope and strategically retarded. If you can get even 10 guys to attack zog together it would actually matter. It would be a global emergency how outside today's shit norm it would be.*

- *If I was to go postal*[1] *wouldn't it increase jew security costs dramatically? They think they're so secure betting on dumb white "goyim" will never do anything. And if I want to bankrupt them then freaking them out into more security spending is perfect. Their bureaucracy is already so inefficient and barley held together from being looted. It won't withstand real attacks.*

- *I'll tell you exactly what's going to happen if I show up at some zog fed base with my 556 semi auto to vent my rage at the regime – I'm going to die almost immediately, and it'll be a footnote for less than two weeks, and then everyone will move on to the next thing. That's why I cannot sacrifice my life without doing more damage than that.*

- *What do I get if I keep playing by "the rules" that zog and trump set for me? More section 8. More permanent decline. More zero community of territory or family. I am siding with the terrorists. My mind is pretty much made up already. I am going to attack the US government one way or another. I already have been for years on a*

[1] To "go postal" is an idiom meaning to become extremely angry, often to the point of engaging in violence.

*low level and this is just the natural next step since they are an ENEMY faction who hates whites and who must be destroyed for me to ever have a good life.*

- *What's the biggest balls move I could make right now as oppressed middle class white US guy? It's to go join a terrorist network and totally abandon the rule of law from fed jews. That's the biggest balls move I could make and I see a lot of great reasons to make that move. I see zero compelling arguments to keep playing by "the rules."*

On or about June 22, 2026, FBI Task Force Officers conducted a consensual, non-custodial interview with Defendant at his apartment residence in Austin, Texas. After identifying themselves as law enforcement officers, Defendant invited the officers into his residence. Almost immediately, Defendant stated that he knew why law enforcement was there. Defendant freely and voluntarily agreed to an interview. In summary, during the nearly two-hour interview, Defendant voluntarily stated the following, among other things:

1. Defendant claimed ownership of the Gab account PoisonDartPepe and stated he has had the account since 2018. He stated he uses his laptop and desktop, which were in his apartment in the living room, to access his PoisonDartPepe account and post content.

2. Defendant made statements indicating he was openly anti-Semitic, expressed white supremacists' views, and was sympathetic towards Nazism during the interview. He stated that he believed that the federal government and Jewish people were harming him, and he expressed an intent to overthrow the government. Defendant reiterated several times during the interview that the reason he had not acted against the government or Jewish people is that he does not believe that a single person conducting an attack would have a large impact. He stated that a larger coordinated group of people acting together would be needed to achieve a large impact on the government and or society.

3. Defendant stated he had attempted to contact people online who are interested in taking action but has not been successful. In 2019, he contacted the Northwest Front, a U.S.-based white separatist organization rooted in neo-Nazism, anti-Semitism, and militant white nationalism.

4. Defendant admitted to making the post threatening to kill federal employees and the post threating to "go postal" on a synagogue (charged in Count One of the Indictment).

5. Defendant was read the post from June 20, 2026, where Defendant posted that he can go to any synagogue and go postal [set forth on page 3 above and charged in Count One] and was asked to explain the post. He initially stated that it was a thought experiment and if he really wanted to wound the people running the government that type of strategy would get some type of result. Defendant agreed that the post could be interpreted as extremely threatening and would cause someone to believe a person was going to shoot up a synagogue. Defendant went on to state that the "counter argument" was that mainstream media talks about taking down white people, so he did not feel "super guilty" for sending back what they were sending to him. He advised he understood why someone would report the post and be upset. He wanted to upset "them" because he is upset with the news trying to get rid of white people. He called his post an extreme reaction, but advised his heart is in the right place because he just wants his people to have dignity and a future in America. Defendant accused Jewish people of being malicious and not wanting him to be successful. He said that if they are going to turn it into an "us versus them" situation, he has to fight for his own side. Defendant recognized the threatening nature of the post but claimed the post was justified.

6. Defendant admitted to having several firearms and tactical gear in his residence to include a black, AR-15 style rifle, a .308 caliber bolt action rifle, a semi-automatic pistol, a revolver, body armor, and a helmet. Defendant advised the guns are "only good for people, unarmed people, and that's not who he wants to bother." When asked who he wanted to "bother," Defendant stated that he had looked at the World Economic Forum in Wyoming. He had talked with people on the internet "about that exact thing" and people on the internet told him he would never get close or have a chance. Defendant stated that no one told him he didn't have to do that and the government has never reached out to him to help him. He was upset that people didn't help him and just called him stupid.

7. When asked whether he had thought of incidents that would have an impact as opposed to just randomly killing people, Defendant responded: "yes, like you don't want to die for nothing, it's not suffering just to suffer, there is an end goal of I guess you would say regime change."

Soon thereafter, FBI executed a search warrant at Defendant's residence. Among other things, Defendant was found in possession of firearms (including the firearms he mentioned during the interview), ammunition, and body armor.

<u>**Argument**</u>

**I. Section 875(c) applies to "true threats," which are unprotected under the First Amendment, and need not be specifically directed toward an individual or group.**

The plain text of Section 875(c) states that the statute applies to "any threat to injure the person of another." "'True threats' of violence is [an] historically unprotected category of communications [under the First Amendment]." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (citing *Virginia v. Black*, 538 U.S. 343, 359 (2003)). The Supreme Court has defined "true threats" as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. at 359. The Fifth Circuit has held that the intended target of a threat does not need to be aware of the threat. *See United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001) ("The language of § 875(c) does not require that the threat be made directly to the intended target; it simply prohibits 'any threat to injure the person of another' made in interstate commerce.").

Defendant's assertion that his threatening communications are not particularly directed enough at person of another to be chargeable was rejected by the Supreme Court in *Virginia v. Black, supra*. In *Black*, the Supreme Court determined that a cross burning on private property visible to a public road was a true threat by intimidating and causing fear to particular race of people, despite a lack of words being directed at a particular individual or any showing that any members of that race were even witnesses to the cross burning. *Id.*[2] "The speaker need not actually intend to carry out the threat"; rather, "a prohibition on true threats 'protect[s] individuals from the

[2] Even though the Supreme Court struck down the Virginia statute at issue in *Virginia v. Black*, it did not do so because the statute banning cross burning with the intent to intimidate was invalid, which the Court stated was "proscribable under the First Amendment." *Id.* at 363. The statute in question was deemed unconstitutional because it stated "[a]ny such burning of a cross *shall be prima facie evidence* of an intent to intimidate a person or group of persons." *Id.* at 364 (emphasis added).

fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id.* at 359–60**.** All of Defendant's conduct and words as set forth in the Indictment were exactly what the First Amendment does not protect: "advocacy of the use of force or of law violation … where such advocacy is directed to … producing imminent lawless action." *Id.* at 359 (*quoting Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969) *(per curiam)).*

Other examples of threats appellate courts have found to be sufficiently particularly directed enough are numerous. The Fifth Circuit recently held that posts made on the Facebook social media platform threatening to "lick everything" in two San Antonio area grocery stores during the COVID-19 pandemic were actionable:

> Neither is [the defendant] saved by the fact that his posts did not name a particular individual or group of individuals. The posts described actions that would have placed employees and potential shoppers at two grocery stores at risk. He did not explicitly refer to those groups of individuals, but the definition of true threats, though narrow, cannot depend on so technical a distinction. True threats are unprotected because they have relatively low value and because restricting them protects individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur.

*United States v. Perez*, 43 F.4th 437, 443-44 (5th Cir. 2022) (cleaned up).

The Third Circuit has held that Defendant's posting the coordinates for FBI headquarters in Washington along with comment "the zero hour is approaching" that did not include the identity of a natural person constituted a true threat against a group of individuals – all FBI agents at that building – under Section 875(c), citing *Black*. *United States v. Miah*, 120 F.4th 99, 107-108 (3rd Cir. 2024); *see also United States v. Davitashvili*, 97 F.4th 104, 109-110 (3rd Cir. 2024) (unnamed group of coworkers who were subject of threat sufficient for Section 875(c) conviction).

The Seventh Circuit has found that Defendant's threats to injure or kill "college student[s]," "vulnerable individuals," people "walking their dogs," "high net worth individual[s]," and

“witnesses” that “get [in] the way” was sufficient proof to support a Section 875(c) conviction without any further defining the groups of individuals. *United States v. Khan*, 937 F.3d 1042, 1049-50 (7th Cir. 2019).

The Tenth Circuit has found that Defendant’s targeted messages of deadly action at Tulsa Police Department officers generally was sufficiently particularized to support a Section 875(c) conviction. *United States v. Stevens,* 881 F.3d 1249, 1255 (10th Cir. 2018). Stevens’ threat against all Tulsa police officers and their families encompassed all of Tulsa and presumably anywhere Stevens found his potential victims.

The Eleventh Circuit affirmed a conviction for Section 875(c) based on the defendant’s threat to go to a government building in the county, “maybe a post office, maybe even a school” and “teach all the government hacks working there what the 2nd amendment is all about.” *United States v. Martinez.* 736 F.3d 981, 983 (11th Cir. 2013).

Thus, Defendant’s threats to kill federal employees, state representatives, Jews, and Zionists are sufficiently specific and direct to constitute true threats.

To prove a violation of Title 18, United Staes Code, Section 875(c), the United States submits that the jury should be instructed with reference to Fifth Circuit Pattern Jury Instructions 2.38 and 2.39, as modified by the recent Supreme Court decision in *Counterman v. Colorado*t:

> Title 18, United States Code, Section 875(c), makes it a crime for anyone to send or transmit any threat to injure the person of another in interstate or foreign commerce.
>
> For you to find Defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First*: That Defendant knowingly sent or transmitted a communication;
>
> *Second:* the communication contained a threat to injure the person of another, as charged;

> *Third*: That Defendant sent or transmitted that communication for the purpose of issuing a threat or with knowledge the communication will be viewed as a threat or recklessly disregarding a substantial risk that his communication would be understood as a threat;[3] and
>
> *Fourth*: That the communication was sent in interstate commerce.
>
> A "threat" is a serious statement expressing an intent to injure any person, which under the circumstances would cause apprehension in a reasonable person, as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner.[4]
>
> It is not necessary to prove that the defendant actually intended to carry out the threat made.
>
> A person acts recklessly, when he "consciously disregarded a substantial risk that his communications would be viewed as threatening violence."

*See* Fifth Circuit Pattern Instructions (Criminal) 2.38, 2.39 (2024), as modified.

The indictment clearly alleges the necessary fact to meet each and every element of Title 18, United States Code, Section 875(c) and should not be dismissed.

## II. There is a factual issue about whether each of Defendant's charged statements constitutes a "true threat" which must be resolved by a jury, not a Rule 12 pretrial motion.

In his Motion, Defendant repeatedly characterizes as "undisputed"[5] the context of Defendant's threats – namely, that he posted the alleged threats on a social media platform – their purported lack of specificity, and their purported "hyperbolic" nature. (ECF 39 at 6-13.) Defendant thus contends that his alleged threats are protected by the First Amendment and that

---

[3] *Counterman*, 600 U.S. at 69; *Elonis*, 575 U.S. at 737, 740; *United States v. Knight*, 2024 WL 909586, *1-*2 (5th Cir. Mar.4, 2024).

[4] *Virginia v. Black,* 538 U.S. at 359; *Watts v. United States,*394 U.S. 705, 708 (1969).

[5] The word "undisputed" is used 11 times in Defendant's Motion.

they do not constitute "true threats." Although the Government agrees that Defendant made his threat postings on the Gab social media platform, the Government further alleges and intends to prove that the postings, in fact, constitute true threats unprotected by the First Amendment. Defendant cites no statute or caselaw supporting his contention that posting the statements on a public social media platform or their purported lack of specificity renders the statements protected speech under the First Amendment rather than unprotected "true threats."

Defendant spends several pages of his Motion arguing why his postings do not constitute "true threats." Defendant's arguments are fact laden. Addressing them will require alleging other facts which will only serve to underscore the Government's ultimate response: that whether Defendant's statements constitute "true threats" can only be properly resolved by a jury and cannot be resolved by a pretrial motion to dismiss under Fed. R. Crim. P. 12. "The propriety of granting a motion to dismiss an indictment under Rule 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact…. A court may not grant a motion to dismiss on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *United States v. Burger*, 170 F.4th 395, 402–03 (5th Cir. 2026) (cleaned up).

Here, like in *Burger*, Defendant seeks dismissal by framing the facts as "undisputed" and then making various arguments about why the alleged threats do not amount to true threats. But the facts surrounding whether the statements constitute "true threats" are *not* undisputed, particularly the totality of their context and the full context's effects on the "true threat" analysis, which will require additional evidence. The Indictment alleges that Defendant's Gab statements are true threats. In contrast, Defendant characterizes them as conditional, hypothetical, and/or

hyperbolic speech protected under the First Amendment. This is precisely why a jury is required to determine whether Defendant's statements constitute "true threats:"

> A trial on the merits is necessary to determine whether Burger's statements were true threats. Whether a statement is a true threat is generally a question for the jury. In other words, whether Burger's statements are true threats is a fact issue. And there is no authority under Rule 12 ... to dismiss on the basis of a sufficiency-of-the evidence defense which raises factual questions embraced in the general issue….

*Id*. at 403 (cleaned up). Furthermore,

> Burger's argument that a trial on the merits was unnecessary boils down to his assertions that "[n]either the statements themselves nor their context were disputed" and that "[t]here is no dispute about what Roblox is." We disagree that the context is undisputed and hold that a trial on the merits is necessary to evaluate whether a reasonable jury could find that Burger's statements were true threats. Indeed, speaking on Roblox, or similar platform, does not categorically immunize someone from the criminal code.

*Id.* at 406.

In essence, "there are disputed facts bearing on whether [Defendant's] statements were true threats—that is, whether [Defendant] 'consciously disregarded a substantial risk that his communications would be viewed as threatening violence' and 'an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm….'" *Id.* at 404. As the Fifth Circuit concluded in *Burger*, whether the alleged statements constitute true threats is a factual question for a jury to resolve, not a Rule 12 pretrial motion. *See Id.* at 406 (citing *United States v. Rodriguez-Rivera*, 918 F.3d 32, 35 (1st Cir. 2019) (noting that "[n]o circuit" allows dismissal under Rule 12 "on an incomplete or disputed factual record")).

Consequently, Defendant's motion to dismiss the indictment on the grounds that his Gab statements were not "true threats" lacks merit and should be denied.

## III. Section 875(c) is not unconstitutionally vague.

Contrary to Defendant's argument, Section 875(c) clearly puts an individual on notice that it is illegal to transmit threats in interstate or foreign commerce to injure the person of another. Defendant cites no caselaw to the contrary or holding that Section 875(c) is unconstitutionally vague. In fact, recent caselaw addressing Section 875(c) finds that the statute does have a scienter element that defeats a vagueness challenge.

Section 875(c) "requires that a communication be transmitted and that the communication contain a threat." *Elonis v. United States*, 575 U.S. 723, 732 (2015). "When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." *Id.* at 736 (cleaned up). "There is no dispute that the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Id.* at 740. Additionally, "the First Amendment requires proof that the defendant had some subjective understanding of the threatening nature of his statements [and] a mental state of recklessness is sufficient … [showing] that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman*, 600 U.S. at 69.

The Third Circuit recently held, post-*Counterman,* that Defendant's vagueness challenge against a Section 875(c) prosecution failed. "A conviction under 18 U.S.C. § 875(c) requires proof of both a subjective and an objective component; the subjective component is satisfied if the defendant transmitted a communication for the purpose of issuing a threat or with the knowledge it would be viewed as one. This subjective component alleviates concerns that a defendant will be convicted for an action that he or she committed by mistake." *Miah*, 120 F.4th at 108 (cleaned up).

In *Counterman,* the Supreme Court emphasized that the First Amendment does not protect a speaker who makes true threats. *Counterman*, 600 U.S. at 69. To distinguish protected speech under the First Amendment from the unprotected speech of a true threat, the Court reiterated that the speaker mush have the subjective intent that his words be taken as a threat, to knowing others will take his words to be a threat, or to act recklessly by consciously disregarding a substantial risk his words will be viewed as a threat. *Id.* With the addition of the subjective intent element as set forth in the Government's proposed jury instruction, even Justice Sotomayor's vagueness concerns were alleviated. *Id.* at 100-101 (Sotomayor, J., concurring).

The Ninth Circuit concurred with this construction in a pre-*Counterman* case:

> A conviction under § 875(c) requires the specific intent to threaten, and only true threats may be prohibited. Defendant argues that § 875(c) is void for vagueness because the statute itself neither requires specific intent nor defines true threats. However, rather than making the statute void for vagueness, the narrowing construction provided by the relevant cases actually alleviates possible void-for-vagueness concerns. Furthermore, we are convinced that the statute is not impermissibly vague. An ordinary citizen can understand what is meant by the terms "threat to kidnap" and "threat to injure," and we are persuaded that the statute provides sufficient standards to allow enforcement in a non-arbitrary manner.

*United States v. Sutcliffe*, 505 F.3d 944, 953–54 (9th Cir. 2007) (cleaned up).

Defendant argues that his speech was not a threat and "he faces prosecution for pure speech about political subjects in a climate of intense political polarization." (ECF 39 at 15.) Defendant argues that "a determination of when angry hyperbole crosses the line will depend on amorphous norms around language, which will vary greatly from one discursive community to another." (ECF 39 at 15.) Here, it is the Government's contention that Defendant's "angry hyperbole" clearly crossed the line into true threats. In each of the threats, he uses the word "kill" or language obviously meaning "to kill." In the Count One threat, he refers to picking a synagogue and "go[ing] postal," a clear reference to a violent threat to kill people, specifically Jews. In the Count Two, Three, and Four threats, he makes a clear reference to killing people and provides details about

how he would do that. Defendant is not facing prosecution for expressing mere grievances or angry hyperbole; he is facing prosecution for making explicit threats to kill people. There could be no clearer prohibited "threat … to injure the person of another" than a threat to kill them that uses the word "kill" and similar language. There is nothing amorphous about whether "going postal" or "killing" constitutes a threat to injure others in the context they were used by Defendant.

Section 875(c) is not constitutionally vague or overbroad. The statute protects the public from persons like Defendant who knowingly make true threats with the intent to make a threat, knowing his comments will be taken to be a threat, or recklessly disregarding that his words will be taken as a threat. The First Amendment does not protect Defendant when he knowingly makes true threats. There are no exceptions under the First Amendment for making true threats in a social media posting or as part of political discourse. Making it a crime to threaten to kill Jews, servicemembers, federal employees, and state representatives in no way infringes on any protected speech, even speech that is angry, polarizing, or hyperbolic. Merely because Defendant chooses an online platform to make his threats does not negate that he chose to target a groups of individuals with threats to kill them.

Defendant's Motion to Dismiss the Indictment based on vagueness grounds is meritless and should be denied.

## **Conclusion**

For the reasons set forth herein, the United States urges the Court to deny Defendant's Motion to Dismiss Indictment.

Respectfully submitted,

JUSTIN R. SIMMONS
United States Attorney

By: /s/ Matthew Devlin
________________________________
MATTHEW DEVLIN
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Ruben Peña Jr, Esq.
Assistant Federal Public Defender
ruben_pena@fd.org

Horatio R. Aldredge, IV, Esq.
Assistant Federal Public Defender
horatio_aldredge@fd.org

504 Lavaca Street, Suite 960
Austin, Texas 78701
(512) 916-5025
Fax (512) 916-5035
*Attorneys for Defendant*

/s/ Matthew Devlin
________________________________
MATTHEW DEVLIN
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| **v.** | § | CRIMINAL NO. A-26-CR-385 DAE |
| | § | |
| **RYAN THOMAS GRIFFIN,** | § | |
| | § | |
| **Defendant.** | § | |

**ORDER**

The Court has considered Defendant's Motion to Dismiss Indictment (ECF 39), and the Government's Response in opposition thereto (ECF ___), and finds said Motion to lack merit. Accordingly,

**IT IS ORDERED** that, for the reasons set forth in the Government's Response (ECF __), Defendant's Motion to Dismiss Indictment (ECF 39) be, and is hereby, DENIED.

**SIGNED** at Austin, Texas, this _______ day of ______________________ 2026.

______________________________________
DAVID ALAN EZRA
SENIOR U.S. DISTRICT JUDGE