IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | NO. 1:26-CR-00385-DAE-1 |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| RYAN THOMAS GRIFFIN, | § | |
| | § | |
| *Defendant*. | § | |

ORDER DENYING DEFENDANT'S MOTION TO REVOKE ORDER OF DETENTION PENDING TRIAL

The matter before the Court is the Defendant's Motion to Revoke Order of Detention Pending Trial (Dkt. # 24) filed on July 15, 2026, and the Government's response in opposition filed on July 23, 2026 (Dkt. # 30). The Court held a de novo hearing on this matter on August 28, 2026. For the reasons stated below, after carefully considering the arguments of counsel, the materials in the record, and relevant law, the Court **DENIES** Defendant's motion, leaving in place the Magistrate Judge's Order of Detention Pending Trial (Dkt. # 21).

BACKGROUND

Beginning in February of 2026, the FBI Joint Terrorism Task Force received several tips regarding posts from user PoisonDartPepe on the social media platform Gab. (Dkt. # 1 at 3–6.) Several of PoisonDartPepe's posts contained

terroristic threats and anti-government, antisemitic statements. (Id.) The FBI linked Defendant Ryan Thomas Griffin ("Defendant" or "Griffin") to the PoisonDartPepe account, and on June 30, 2026, Griffin was arrested.

In an affidavit attached to the Criminal Complaint, FBI Task Force Officer Brendan Schwanky detailed the circumstances of the investigation leading to Defendant's arrest and described statements from Defendant's publicly available Gab posts, including the following:

- *I am siding with the terrorists. My mind is pretty much made up already. I am going to attack the US government one way or another.*

- *My Goal for the next 10-20 years is to get hot girl I can have kids with, 10 acres of land to live on, stable income to support my family. And if I can't get that as upper middle class white collar educated heritage US guy then I am going to attack the federal government and kill their employees or the US military. Right now – looking like terrorism is my better option. I like JD Vance meme. It's not a joke for me. We are going to fucking kill you. You are going to make this deal available to me or I am going to start building bombs.*

- *I'm just a random nobody in the US and I can pick any synagogue I want and go postal on it and the president will be visiting the place the next week to pay respects to his real masters. Your theater kid shit will be easy to play and as soon as I get an organized group of men willing to act on it we are going after your ass zog*[1] *trash.*

- *Zionist do not have the authority to lecture me on sexual morals or anything else. They're criminals and I am going to kill them.*

[1] "Zog" is an acronym for "Zionist Occupation Government." (Dkts. ## 1, 3.)

(Dkt. # 1 at 4–6.) Officer Schwanky also stated that he and a fellow task officer conducted a consensual interview with Defendant at his residence on June 22, 2026, during which Defendant admitted to owning the PoisonDartPepe account and continued to make statements in line with the anti-government and antisemitic views expressed in his posts. (Id. at 6–8.) Defendant also admitted to having several firearms, including an AR-15 rifle, as well as ammunition, body armor, and a helmet. (Id. at 7.) These items were found at Defendant's residence and seized by police pursuant to a search warrant executed on the date of Defendant's arrest. (Dkts. ## 16; 37 at 34–37.)

The Government moved for Griffin's pretrial detention on the grounds that the case involves a crime of violence; that there is a serious risk that Defendant will flee; and that no condition or combination of conditions would reasonably assure Defendant's appearance at trial nor the safety of the community or any other person. (Dkt. # 4.) On July 2 and July 7, 2026, a combined preliminary and detention hearing was held before Magistrate Judge Susan Hightower. (Dkts. ## 13, 19.) During the proceedings, the Government presented evidence including witness testimony from Officer Schwanky and exhibits depicting the firearms and related items seized at Defendant's residence. (Dkts. ## 16, 37.) Defendant admitted into evidence letters of support from his brother and mother. (Dkts. ## 20, 38.)

After receiving the parties' arguments and hearing evidence, Judge Hightower ordered Defendant's detention pending trial. Specifically, Judge Hightower found that (1) the Government had proven by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community and (2) the Government had proven by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance. (Dkt. # 21.) Judge Hightower cited as reasons for her decision that the weight of evidence against Defendant is strong, that he lacks significant family or other ties to the community, given that he had lived in Austin for only a year at the time of his arrest, and that his release would pose serious danger, particularly to the groups threatened in his Gab posts. (Id.) Judge Hightower additionally explained that the evidence of weapons and other tactical equipment found at Defendant's home factored into her decision. (Id.) Judge Hightower therefore ordered Defendant be remanded to the custody of the Attorney General for confinement. (Id.) Defendant now appeals that decision pursuant to 18 U.S.C. § 3145(b). (Dkt. # 24.)

## APPLICABLE LAW

The Government may move for a criminal defendant's pretrial detention pursuant to subsection (f) of 18 U.S.C. § 3142 ("Section 3142"). Under the Bail Reform Act, a person charged with a federal criminal offense must be

released pending trial unless, "after a hearing pursuant to the provisions of subsection (f) of [Section 3142], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989). "[T]he lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others or the community is sufficient; both are not required." United States v. Fortna, 769 F.2d 243, 249 (5th Cir. 1985) (alteration in original).

Under 18 U.S.C. § 3145 ("Section 3145"), a "person ordered detained by a magistrate judge may seek review in the district court by filing 'a motion for revocation or amendment of the order.'" United States v. Erxleben, 535 F. App'x 424, 424 (5th Cir. 2013) (per curiam) (quoting 18 U.S.C. § 3145(b)). Motions to revoke or amend a detention order "shall be determined promptly," 18 U.S.C. § 3145(b), and the district court's review of such motions is *de novo*, see Fortna, 769 F.2d at 249.

Section 3142(g) provides that a court shall consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including, among other things, his family ties, employment, length

of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); United States v. Acosta-Leyva, 751 F. App'x 594, 595 (5th Cir. 2019) (per curiam).

## ANALYSIS

Defendant seeks to revoke Judge Hightower's order of detention pursuant to 18 U.S.C. § 3145(b). (Dkt. # 24.) Defendant argues that the Government has failed to establish by clear and convincing evidence that no condition or combination of conditions would reasonably ensure the safety of the community and, by a preponderance of the evidence, that no condition or combination of conditions would reasonably assure Griffin's appearance. (Id. at 2.) In support, Defendant emphasizes his lack of criminal history; that he has never failed to appear for Court; his voluntary cooperation with federal agents; and that he never took concrete steps towards carrying out his threats of violence, in part because he was unable to recruit others to act with him. (Dkt. # 24 at 3–5.) Griffin also contends that he has a strong family support system. (Id. at 5.) For these reasons, Defendant argues that conditions on his release, such as the surrender of his firearms and related equipment, GPS monitoring, and/or restricting his access to social media would ensure community safety as well as his

appearance. (Id.) Additionally, Defendant argued at the de novo hearing that the weight of the evidence against him is weak because all four counts in the indictment are based on constitutionally protected statements. (August 28, 2026 Hearing.)

In response, the Government argues that Defendant's pretrial detention is warranted based on evidence of Defendant's numerous threats of violence against Jewish people and federal employees, including U.S. military servicemembers; Defendant's possession of multiple firearms and ballistic gear; and Defendant's statements that his own choices were what caused him to refrain from carrying out his threats prior to his arrest—not, for instance, because such violence would be illegal or immoral. (Dkt. # 30.) The Government also contends that Defendant's lack of ties to the Austin community, as evidenced by him having neither family nor property in the surrounding area, makes him a flight risk. (Id. at 7–8.) The Government argues that ordering conditional release would be insufficient here because Defendant could easily access other firearms and because he has repeatedly expressed a desire to enlist others in carrying out his attacks. (Id. at 9–10.)

At the outset, the Court will address Defendant's argument from the de novo hearing that the Government has not established a statutory basis for detention under Section 3142(f) because (1) the offense Defendant is charged with

is not a crime of violence under Section 3142(f)(1)(A) and (2) there is not a serious risk that Defendant will flee under Section 3142(f)(2)(A). (August 28, 2026 Hearing.) Although the Government's Motion for Detention was predicated on both of these bases, see Dkt. # 4 at 1, the Magistrate Judge based her ruling on the Section 3142(f)(2)(A) grounds. She found that there is "a serious risk that [Defendant] will flee if released" in this case. (Dkt. # 21 at 1.)

The Court acknowledges that the Fifth Circuit has not answered whether the offense charged here constitutes a "crime of violence" under Section 3142(g). But the Court need not resolve that question here because Defendant's detention is permissible so long as the Government has established at least "one of the [seven] circumstances listed in [Section 3142](f)(1) and (2)." United States v. Betford, 816 F. Supp. 3d 624, 628 (N.D. Tex. 2026) (alteration in original) (quoting United States v. Byrd, 969 F.2d 106, 109 (5th Cir. 1992)), and the Government also cited Defendant's risk of flight as a basis for its detention motion. See 18 U.S.C. § 3142(f)(2)(A); Dkt. # 4 at 1. Accordingly, the Court will turn to analyzing the Section 3142(g) factors.[2]

---

[2] Based on his position that this case does not involve a crime of violence, Defendant also seemed to argue at the de novo hearing that this Court may not consider whether Defendant poses a danger to the community and instead may only consider evidence of Defendant's risk of flight. (August 28, 2026 Hearing.) The Court disagrees. The Section 3142(g) factors, which expressly include "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," appear to apply *regardless* of whether the offense

After considering the record, the filings, the evidence and arguments of counsel at the de novo hearing, as well as the Section 3142(g) factors, the Court concludes that the Government has shown by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of [Defendant]" and by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Court addresses the Section 3142(g) factors below.

a. Nature and circumstances of charged offense

On July 21, 2026, Defendant was indicted on four counts of the criminal offense of Interstate Transmission of Threatening Communication in violation of 18 U.S.C. § 875(c). (Dkt. # 27.) 18 U.S.C. § 875(c) prohibits the "transmi[ssion] in interstate or foreign commerce [of] any communication containing any . . . threat to injure the person or another." At the detention hearing before Judge Hightower, Officer Schwanky testified regarding Defendant's numerous, serious threats of violence against targeted racial, religious, and governmental groups—Jewish persons and federal employees—in his Gab posts,

charged is a crime of violence. See 18 U.S.C. § 3142(g)(4). And because the Court does not address here whether the offense charged constitutes a crime of violence, the "rebuttable presumption" that can arise in cases involving such crimes plays no role in the Court's analysis. See id. § 3142(e)(2).

including the statement: "It's not a joke for me. We are going to fucking kill you." (Dkt. # 37 at 61.) Additionally, Officer Schwanky testified that Defendant indicated in his FBI interview that he understood his posts would cause others to feel threatened. (Id. at 29.)

Defendant argued at the de novo hearing that each of his threats hinged on his ability to recruit others for an attack and thus, taken in context, they should not be understood as serious or imminent. (August 28, 2026 Hearing.) He also contended that his threats lack particularity because they fail to identify a target victim, location, or date for a hypothetical attack. (Id.) Defendant further argued that the statements in the Indictment were cherrypicked from the hundreds of thousands of posts he made over a period of several years, which further shows that Defendant was not likely to act on his threats. (Id.)

The Court does not find these arguments persuasive. Defendant explained to the FBI that his choices were what caused him to refrain from carrying out an attack thus far. (Dkt. # 37 at 23.) As he put it, Defendant viewed the costs of a "lone wolf attack" as outweighing the benefits, but Defendant's view on that calculus could change. (Id.) Moreover, the fact that Defendant had not found a group of likeminded individuals with whom he could coordinate an attack does not lessen the immediacy of statements like "We are going to fucking kill you," "Right now – looking like terrorism is my better option," or "[Zionists are]

criminals and I am going to kill them." (Dkt. # 27 at 2, 4). Further, as shown by the multiple firearms and related gear found at his residence, Defendant had the means to carry out his threats if he chose to do so in the future. Thus, the Court finds that this factor weighs in favor of detention.

b. Weight of evidence against Defendant

The Court must also consider the weight of the evidence against Defendant, although this factor is "of least importance in the detention determination." United States v. Stanford, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009) (first citing United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986); and then citing United States v. Barnett, 986 F. Supp. 385, 393 (W.D. La. 1997)), *aff'd*, 341 F. App'x 979 (5th Cir. 2009). Here, the weight of the evidence against Defendant is strong. In addition to the evidence described above, Defendant admitted to owning the PoisonDartPepe account and made statements to the FBI that were aligned with the white supremacist views expressed in his Gab posts. When asked if he would carry out his threats of violence, Defendant said that he "hoped it never happens" but it was possible. (Dkt. # 37 at 28.)

At the detention hearing, Defendant argued that the weight of the evidence against him is weak because the statements included in the Indictment are

not "true threats" and thus are protected by the First Amendment.[3] This is the central argument of Defendant's Motion to Dismiss Indictment (Dkt. # 39), which the Court will hear separately. The Court need not decide this issue to decide its ruling on the present motion and thus reserves its judgment on the "true threats" issue for the upcoming hearing on Defendant's Motion to Dismiss Indictment. (See Dkt. # 42.)

Considering the evidence the Government presented against Defendant, as explained above, the Court finds that this factor weighs in favor of detention.

c. History and characteristics of Defendant

In considering this factor, a court looks to available information regarding "family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A); see also United States v. Stanford, 341 F. App'x 979, 982 (5th Cir. 2009).

---

[3] "True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" Counterman v. Colorado, 600 U.S. 66, 74 (2023) (alteration in original) (quoting Virginia v. Black, 538 U.S. 343, 359 (2003)). A statement qualifies as a true threat and thus receives no constitutional protection when "an objectively reasonably person would interpret the speech as a serious expression of an intent to cause a present harm" and "the speaker was subjectively aware of [the statement's] threatening nature." United States v. Burger, 170 F.4th 395, 401 (5th Cir. 2026) (alteration in original) (quoting United States v. Jubert, 139 F.4th 484, 490–91 (5th Cir. 2025)).

Regarding the risk of flight, Defendant has lived in Austin for about a year. He has no family in Texas and owns no property here. Defendant also stated during his FBI interview that he "didn't have faith in the legal process." (Dkt. # 37 at 27.) Although Defendant argues that his local employment indicates ties to the Austin community and decreases his risk of flight, he expressed to the FBI that he was dissatisfied with his current employment and that his "work life was pointless." (Id. at 31.) Defendant additionally "complained about his apartment" and expressed frustration with his current life circumstances. (Id. at 25.) A letter from Defendant's mother admitted at the detention hearing before Judge Hightower appeared to confirm Defendant's instability, given her explanation that Defendant has "struggled to find a career that g[ives] him a sense of purpose" and that he has "mov[ed] from job to job" and become "increasingly isolated from family and friends." (Dkt. # 20.)

At the de novo hearing, Defendant argued that high turnover was a natural feature of his industry of information technology. But it was also revealed at that hearing that Defendant had lost his most recent job with Spectrum Business. (August 28, 2026 Hearing.) All in all, the facts recited above tend to support the assertion that Defendant is a flight risk.

Regarding the safety of the community, the parties do not dispute that Defendant has no prior criminal history, which certainly weighs in favor of release.

On the other hand, although Defendant has not yet acted on his repeated threats of violence against specific groups of individuals in the community, Defendant possessed firearms and other tactical gear that he could use to carry out those threats in the future. He has also attempted to recruit other likeminded individuals for the purposes of carrying out a future attack and expressed that these unsuccessful attempts are why he has not yet acted on his threats. (Dkt. # 37 at 20, 31, 49). Defendant indicated to the FBI that he would break the law if he deemed it necessary to achieve his goals. (Dkt. # 38 at 27.)

On the basis of the arguments and the presented evidence, the Court finds that Defendant's lack of community ties makes him a flight risk and that he presents a danger to the community, especially in relation to the groups identified as potential victims of an attack in his Gab posts. Thus, the Court finds that this factor weighs in favor of detention.

d. <u>Nature and seriousness of the danger posed by Defendant</u>

For all of the reasons stated above, Defendant poses a risk of danger based on his repeated threats of violence towards government employees, Zionists, and Jewish people. The nature of this risk is serious due to Defendant's statements that he may commit acts of violence if he deems it necessary in the future and his possession of multiple firearms, ammunition, and protective gear. The Court does not agree with Defendant that conditions on his release would be sufficient to

assure community safety in this case. There is no evidence that, upon his release, Defendant would be unable to acquire more firearms even if he surrenders those seized by police on the date of his arrest. Nor is there evidence that Defendant would refrain from attempting to recruit, as he has done in the past, likeminded individuals to carry out violent attacks on the groups towards whom he espouses hatred, even if his internet usage was restricted or GPS monitoring was put in place. The Court thus finds that this factor weighs in favor of detention.

After reviewing the Section 3142(g) factors, the Court finds that no condition or combination of conditions of release will reasonably assure the community's safety or the Defendant's appearance pending trial. For these reasons, the Court will **DENY** Defendant's motion.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's Motion to Revoke Order of Detention Pending Trial. (Dkt. # 24.) It is therefore **ORDERED** that the Order of Detention Pending Trial entered by Judge Hightower (Dkt. # 21) shall remain in full force and effect.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, August 31, 2026.

David Alan Ezra
Senior United States District Judge