UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. A-26-CR-00385-DAE-1 |
| | § | |
| RYAN THOMAS GRIFFIN | § | |

**REPLY TO GOVERNMENT'S RESPONSE TO MR. GRIFFIN'S MOTION TO DISMISS**

I.

Ryan Thomas Griffin, through Defense Counsel, filed his Motion to Dismiss Indictment on August 17, 2026. *see* Docket No. 39. The Government filed a Response to the Motion to Dismiss Indictment on August 27, 2026. *see* Docket No. 41. The Court set Mr. Griffin's Motion to Dismiss Indictment for a hearing on September 3, 2026 at 9 AM. *see* Docket No. 42. Mr. Griffin's Motion to Strike Surplusage will also be heard at that setting. *Id.*

II.

THE COURT MAY DETERMINE AS A MATTER OF LAW THAT THE CHARGED COMMUNICATIONS ARE NOT TRUE THREATS.

The Government does not dispute that a § 875(c) indictment may, in an appropriate case, be dismissed before trial where the charged communication does not constitute a "true threat." The Government instead argues that this case must proceed to trial because the parties purportedly dispute the context surrounding Mr. Griffin's statements. That argument overreads *United States v. Burger*, 138 F.4th 1073 (5th Cir. 2026). *Burger* does not establish a categorical rule that a § 875(c) prosecution must proceed to trial whenever the Government invokes "context." Rather, it distinguishes between cases in which the relevant circumstances surrounding a communication are genuinely disputed and cases in which the Court can resolve the constitutional question as a matter

of law. Here, the Government identifies no genuine factual dispute concerning the circumstances in which Mr. Griffin made the four charged statements.[1]

The Government may place particular emphasis on the statement in Count Four, posted on March 5, 2025 that, "We are going to fucking kill you." Standing alone, the language is undeniably disturbing. But the question under the First Amendment is not whether a statement is disturbing or offensive; it is whether the communication constitutes a serious expression of an intent to commit an act of unlawful violence against an identifiable person or group. In context, this statement does not convey the requisite expression of a real possibility that violence will follow. The statement contains no identified "we," and, more importantly, no identified or concrete "you." The preceding language refers broadly and hypothetically to "the federal government," "their employees," and "the US military," without identifying any particular person, office, facility, unit, or other concrete target. The statement therefore does not tell its audience who will be killed, by whom, or when. It is instead embedded within a generalized, conditional statement about what Mr. Griffin might do if his stated demands were not met: "if I can't get that . . . then I am going to attack the federal government and kill their employees or the US military." The subsequent "we are going to fucking kill you" does not transform that generalized rhetoric into a threat directed at a particular person or identifiable target. At most, it expresses an angry and disturbing desire or prediction that violence might occur at some indefinite point in the future. That is insufficient to convert the statement into a true threat as a matter of law.

---

[1] The Government's footnote regarding the Defense's repeated reference to "undisputed context" misses the point. The Defense does not contend that the charged communications existed in a factual vacuum. Rather, the relevant circumstances in which Mr. Griffin made the charged statements are not materially disputed. The Government identifies no disputed fact concerning those circumstances. Instead, it points to additional speech and information obtained during its investigation and argues that a jury could consider those materials in assessing the charged statements. That is an argument about what information should inform the constitutional analysis, not a disputed factual circumstance surrounding the communications. The distinction is significant because *Burger* involved an actual dispute concerning the setting in which the challenged statements were made, an online role-playing game involving avatars and a fictionalized environment. The Government identifies no comparable factual dispute here.

The Fifth Circuit has affirmed pretrial dismissal of a § 875(c) indictment where the plain language of the alleged threat did not constitute a threat. *United States v. O'Dwyer*, 443 F. App'x 18, 20 (5th Cir. 2011). Other courts have likewise recognized that whether a communication constitutes a "true threat" may, in appropriate circumstances, be resolved by the court as a matter of law. *see United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013) ("[A] court may conclude that a communication does not constitute a threat as a matter of law in certain cases."); *United States v. Alkhabaz*, 104 F.3d 1492, 1493 (6th Cir. 1997); *United States v. Miah*, 120 F.4th 99, 107 (3d Cir. 2024); *United States v. Bly*, 510 F.3d 453, 457 (4th Cir. 2007); *United States v. Francis*, 164 F.3d 120, 123 n.4 (2d Cir. 1999). Thus, the question before the Court is not whether Rule 12 can ever provide a vehicle for resolving a true-threat issue. It can. The question is whether the Government has identified a genuine factual dispute that prevents the Court from doing so here. It has not.

*a. The Government identifies no disputed fact concerning the context in which Mr. Griffin made the charged statements.*

The Government characterizes this case as presenting a "totality of [the] context" that should be resolved by a jury. But invoking "context" does not itself identify a factual dispute. The relevant question is whether there is a disputed fact concerning the circumstances in which the charged communications were made that could materially alter their meaning. There is not. *Burger* is materially different. There, the context of the defendant's statements was itself disputed. The statements were made within Roblox, an online role-playing environment, and the parties disputed the significance of the defendant speaking through an avatar and the nature of the particular online "church" experience in which the statements occurred. That dispute mattered because a reasonable person's understanding of the defendant's statements depended, at least in part, on whether those

statements were understood as communications made by an avatar within a fictional online environment or as statements made by the defendant himself outside that environment. Nothing comparable exists here. The charged statements were publicly accessible posts on Gab. The Government does not identify any dispute concerning what Gab was, what Mr. Griffin's account was, what audience received the statements, or the circumstances in which Mr. Griffin made the statements. Nor does the Government identify any other disputed circumstance surrounding the four charged communications that would materially alter their meaning.

The Government's assertion that the "totality" of the circumstances should be left to a jury therefore begs the question. What specific fact does the Government contend is genuinely disputed? If the answer is merely that a jury could consider additional evidence concerning Mr. Griffin, that is not the same thing as a factual dispute concerning the context in which the charged communications were made. "Context" is not synonymous with "all evidence concerning the defendant." The Supreme Court's "true threat" cases do not support an unlimited inquiry into every conceivable fact about a speaker. The relevant inquiry concerns the context and circumstances in which the communication was made. *See Elonis v. United States*, 575 U.S. 723, 733 (2015). Where those circumstances are not genuinely disputed, the constitutional question does not become a jury question merely because the Government has additional evidence it would prefer to present at trial.

*b. 'Burger' does not prevent the Court from deciding this case because the Government's additional evidence does not create a disputed context for the charged statements.*

The Government's reliance on *Burger* also overlooks the nature of the evidence it identifies as "context." Rather than identifying a disputed circumstance surrounding the charged communications, the Government points to other statements allegedly made by Mr. Griffin, his broader online activity, and physical items discovered during the investigation. Those matters do

not identify a disputed fact concerning the circumstances in which the four charged communications were made. Mr. Griffin made more than 142,000 posts online. The Government nevertheless asks the Court to consider selected uncharged statements in determining how a reasonable person would understand the four statements for which he has actually been indicted. But the Government's proposed approach has no discernible limiting principle. The question cannot be whether a reasonable person, after reviewing a defendant's entire online history, might form a particular impression of that person. The question is whether the particular communications charged in the Indictment, viewed in context, constitute "true threats." The Government does not explain how an objectively reasonable reader of any of the four charged communications would have understood those communications differently based upon statements that reader had never seen. The Government has identified additional speech by Mr. Griffin, but it has not identified a disputed circumstance surrounding the speech for which Mr. Griffin is actually charged.

The same is true of the Government's reliance on firearms that Mr. Griffin possessed and described during his consensual interview with FBI agents. The Government does not explain how those possessions could have informed the understanding of an objectively reasonable reader who was unaware of them. A reader encountering a publicly accessible Gab post would not have known what firearms Mr. Griffin possessed in his apartment. The later discovery of those firearms therefore does not establish that a reasonable person who encountered the charged posts would have interpreted them differently when they were made. The distinction is important. Under the Government's theory, an otherwise identical statement could have a different constitutional character depending upon facts unknown to the audience: protected speech when uttered by a speaker who owns no firearms, but an unprotected true threat when uttered by a speaker who secretly possesses them. The First Amendment does not permit the objective character of speech

to turn on undisclosed facts about the speaker that were unknown to the audience at the time the speech was made.

c. *The Government's reliance on 'Perez' and 'Virginia v. Black' does not supply the missing factual dispute.*

The Government's reliance on *United States v. Perez*, 43 F.4th 437 (5th Cir. 2022), is misplaced. *Perez* involved threats directed toward two specifically identified H-E-B stores in San Antonio. While it is true that those communications did not specify whether the threat was directed at employees or customers, the Fifth Circuit emphasized the specificity of the threatened conduct and the identified locations (two specific San Antonio-area HEBs). *Id*. Here, by contrast, the charged communications (also lacking a specific targeted individual) do not identify anything resembling the two particular HEB locations in *Perez*: no particular location in no particular city at which Mr. Griffin allegedly intended to carry out an attack. The Government cannot transform the absence of such particularity into the type of concrete factual dispute that existed in *Burger*.

Nor does *Virginia v. Black*, 538 U.S. 343 (2003), establish that the Government may criminalize generalized statements about violence merely because their subject matter is disturbing. *Black* concerned cross burning, a historically distinctive symbol that the Supreme Court described as a particularly virulent form of intimidation because of its "long and pernicious history *as a signal of impending violence*." Id. at 363–64 (emphasis added). The Court's analysis was tied to the distinctive historical meaning of that particular form of expression. *Black* does not stand for the Government's expansive proposition that any untargeted communications can be a true threat. Mr. Griffin's vague statements do not have a similarly long and pernicious history as a signal of impending violence. The gravity or offensiveness of a statement's subject matter cannot substitute for the constitutional requirement that the charged communication itself constitute a true threat.

*d. The Government's proposed approach would improperly convert the First Amendment question into a question about whether the Government can prove its case at trial.*

The Government repeatedly invokes the possibility that a jury could consider additional evidence bearing on Mr. Griffin's intent, his other statements, his possessions, and the overall "effects" of the communications. But that approach conflates two distinct inquiries. Under *Counterman v. Colorado*, 600 U.S. 66 (2023), the Government must establish the requisite subjective *mens rea* before a defendant may be convicted for speech constituting a true threat. *Counterman* did not, however, eliminate the objective component of the true-threat inquiry. The Court must first determine whether the charged speech falls within the category of serious expressions of an intent to commit unlawful violence that the First Amendment permits the Government to regulate. Only then does the question of the defendant's subjective mental state become relevant to criminal liability. The Government's response effectively asks the Court to postpone that threshold constitutional determination because the Government believes additional evidence could be presented to a jury. But the existence of additional evidence does not itself establish a genuine factual dispute. Otherwise, any prosecution based on protected speech could survive pretrial review merely because the Government promises to present additional evidence about the speaker. The First Amendment requires more. As the Supreme Court has recognized, courts must independently review constitutional determinations involving protected expression because "[j]udges—and particularly Members of this Court—must exercise such review in order to preserve the precious liberties established and ordained by the Constitution." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 501 (1984). This is therefore not a request that the Court weigh evidence or resolve a factual dispute reserved for the jury. It is a request that the Court

perform its constitutional function and determine whether the four communications charged in the Indictment constitute speech that falls outside the protection of the First Amendment.

## III.

## THE GOVERNMENT CANNOT AVOID THE FIRST AMENDMENT QUESTION BY POINTING TO UNCHARGED SPEECH AND OTHER EVIDENCE

The Government's response devotes substantial attention to statements Mr. Griffin allegedly made that are not charged in the Indictment. It also emphasizes Mr. Griffin's possession of firearms and other information obtained during the investigation. But none of that evidence identifies a genuine factual dispute concerning the circumstances in which the four charged communications were made. Nor does the Government explain how that evidence changes the objective meaning of those communications to a reasonable reader. The Grand Jury has charged four specific communications. Those communications must themselves satisfy § 875(c) and the constitutional limitations imposed upon that statute. The Government cannot establish a true threat by aggregating the charged statements with an enormous volume of unrelated speech and asking the jury to decide whether, considering Mr. Griffin's entire history on Gab (he has been using posting on Gab since 2018), he appears capable of carrying out violence. That approach is particularly problematic where the Government relies on statements that the ordinary recipient of the charged communications would not have seen. An objectively reasonable reader of a publicly accessible Gab post does not possess knowledge of the speaker's online history, private possessions, or information later uncovered by investigators. The Government has not explained why facts unknown to the audience at the time of the communication should alter the objective constitutional character of that communication.

The same problem applies to the Government's reliance on firearms discovered during the investigation. Mr. Griffin described those firearms during a consensual interview with FBI agents and the firearms were later seized. But the Government does not contend that the ordinary recipients of the charged Gab posts knew what firearms Mr. Griffin possessed. Those facts therefore do not identify a disputed circumstance in which the charged statements were made, nor do they explain why an objectively reasonable reader would have understood those statements differently.

Ultimately, the Government's response does not identify a genuine factual dispute concerning the circumstances in which Mr. Griffin made the four charged statements. Instead, it identifies additional evidence that the Government would like to present at trial. That is insufficient to prevent the Court from determining, as a matter of law, whether the charged speech constitutes constitutionally unprotected true threats. For these reasons, *Burger* does not require this case to proceed to trial merely because the Government invokes "context." The Government has not identified the type of disputed circumstance that prevented pretrial resolution in *Burger*.

IV.

The Court may therefore determine, as a matter of law, whether those communications constitute true threats within the meaning of 18 U.S.C. § 875(c). The answer is no.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ RUBEN PENA, JR.
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24072983

/s/ HORATIO ALDREDGE
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24064026

*Attorneys for Ryan Thomas Griffin*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of August 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Matt Devlin
United States Attorney's
Office 903 San Jacinto
Blvd., Suite 334
Austin, TX 78701

/s/ RUBEN PENA, JR.

/s/ HORATIO ALDREDGE