**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **NO. 1:26-cr-00385-DAE** |
| | § | |
| **RYAN THOMAS GRIFFIN** | § | |

# DEFENDANT'S MOTION TO EXCLUDE UNCHARGED SOCIAL-MEDIA POSTS, FIREARMS AND RELATED ITEMS, IDEOLOGICAL LITERATURE, RELIGIOUS-MOTIVATION SPECIAL FINDINGS, AND IMPROPER LAW ENFORCEMENT OPINION TESTIMONY

TO THE HONORABLE UNITED STATES DISTRICT JUDGE DAVID A. EZRA:

Defendant, Ryan Thomas Griffin, moves, pursuant to Federal Rules of Evidence 401, 402, 403, and 404(b), to exclude evidence concerning:

1. Gab Posts Not Charged in the Indictment;
2. Firearms, Ammunition, Tactical Gear, and Related Items;
3. Ideological Books and Literature;
4. The Special Findings in Counts One and Two; and
5. Law Enforcement Opinion Testimony Interpreting Posts as "True Threats."

## BACKGROUND

The July 21, 2026 Indictment charges four violations of 18 U.S.C. § 875(c), each arising from a specified public Gab post between March 2025 and June 2026. Dkt. #27. Griffin moved to strike surplusage (Dkt. #34) and dismiss the Indictment (Dkt. #39). Following a September 3, 2026 hearing, the Court denied both motions on September 14, 2026. Dkt. #51. Jury selection is scheduled for December 7, 2026. The Government may seek to introduce Mr. Griffin's other Gab posts and evidence of items found in his home. The Court should exclude such evidence for the reasons set out below.

## LEGAL STANDARD

Federal Rules of Evidence 401 and 402 require relevance. Rule 403 requires exclusion of relevant, otherwise admissible evidence when its probative value is substantially outweighed by

the danger of unfair prejudice, confusion, misleading the jury, or cumulative presentation. The Court has broad discretion under Rule 403 in imposing reasonable limits on evidence that would be repetitive or only marginally relevant. *See United States v. Skelton*, 514 F.3d 433, 442 (5th Cir. 2008); *United States v. Juarez,* 866 F.3d 622, 629 (5th Cir. 2017) (considering whether extrinsic evidence occupied more of jury's time than evidence of the charged offense).

Further, Rule 404(b)(1) prohibits propensity evidence: evidence of an extrinsic act or wrong must be relevant to a genuine noncharacter exception to the rule. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

Admitting evidence of "nothing more than [a defendant's] abstract beliefs" also violates the First Amendment when not relevant to a disputed issue. *Dawson v. Delaware*, 503 U.S. 159, 165–67 (1992) (error to admit stipulation regarding Aryan brotherhood membership).

In a true-threat prosecution, context matters, because a communication is only a true threat when "an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm." *United States v. Burger*, 170 F.4th 395, 401 (5th Cir. 2026) (per curiam). Indeed, as this Court recognized, the statements in the indictment "do contain some language that could be viewed as hypothetical, abstract, or conditional." Dkt. #51 at 18. And a statement's "lack of particularity" may negate the proposition that an objectively reasonable listener would conclude that threatened violence will occur. *Id.* at 20. The Government must also prove that the defendant was subjectively aware of the substantial risk that a communication would be viewed as threatening. *Counterman v. Colorado*, 600 U.S. 66 (2023); *United States v. Nformangum*, 2026 WL 18900, at *2 (5th Cir. 2026) ("The inquiry is twofold: whether a reasonable person would perceive the statement as threatening, and whether the speaker was subjectively aware of its threatening nature.")

## ARGUMENT

### I. The Court should exclude uncharged Gab posts and items found in Mr. Griffin's home.

#### A. Uncharged Gab Posts Should be Excluded.

The first question before the jury will be whether an objectively reasonable person would interpret any of Mr. Griffin's four indicted statements as a serious expression of intent to cause a present or future harm. Those four statements were selected out of over 130,000 that Mr. Griffin made on Gab. But Mr. Griffin is not on trial for his entire online history, political ideology, or offensive expression.

The other posts are not relevant under Rule 401 because they do not make it more probable that a reasonable person reading one of the four posts at issue would have believed it. *Jackson*, 339 F.3d at 354 ("Evidence in criminal trials must be strictly relevant to the particular offense charged."). The Government may argue that other posts are relevant "context." But similarity of tone or viewpoint alone does not show that an uncharged post provides relevant context rather than impermissible propensity evidence. Context here is self-contained: it refers to the forum where the statement was made, what that statement contained, and how the speaker and recipients reacted in the moment. *See Watts v. United States*, 394 U.S. 705, 707 (1969) (context included forum (during a political debate), contents (condition on an event that would not occur), and response (laughter)); *Burger*, 170 F.4th at 400 (analyzing role-playing context of a video game and noting that "a statement in a play or a movie might reasonably be viewed differently from the same statement left in a voicemail by a masked number"); *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001) (context included content of statements in question, including whether speaker indicated he was joking). Context does not encompass the totality of Mr. Griffin's online history unknown to an objectively reasonable reader of the four posts in question.

Even if they are relevant, these unindicted statements should be excluded under Rule 403 because any probative value is substantially outweighed by the danger of confusing the issues, misleading the jury, and needlessly presenting cumulative evidence. *See United States v. Rider*, 94 F.4th 445 (5th Cir. 2024) (proper to exclude evidence where jury would give "undue consideration"). Admitting these statements would also run afoul of Rule 404(b) because they invite an impermissible character evidence. As a threshold matter, the Government has not filed a notice under Rule 404(b)(3) identifying each proposed post, its date, audience, relationship to a charged post, and the precise permissible inference sought under Rule 404(b).[1] Otherwise, the jury may infer that because Mr. Griffin frequently used violent or hateful language, the four charged statements must be criminal threats. Rule 404(b) forbids that shortcut, Rule 403 weighs strongly against a cumulative presentation of unrelated inflammatory posts, and the First Amendment protects every statement that is not a "true threat." *See Texas v. Johnson*, 491 U.S. 397, 414 (1989) (the First Amendment protects the expression of ideas that society finds offensive or disagreeable).

Mr. Griffin does not seek to exclude surrounding communications properly offered to explain a charged post, including under Rule 106 where applicable. He seeks to prevent unrelated posts from becoming a substitute prosecution of his character. The Court should exclude such posts absent a particularized showing and, alternatively, require a ruling before any reference to them is made by either counsel for the government or a government witness.

**B. Firearms and Related Evidence Should be Excluded.**

Mr. Griffin is not charged with a firearms offense. Although the search of Mr. Griffin's home uncovered firearms and ammunition, he is not charged with possessing them unlawfully or with planning or preparing for an attack. Mr. Griffin is a lawful firearms owner, as he has never

[1] Mr. Griffin will respond further to any notice filed by the Government in accordance with Rule 404(b)(3).

been convicted of a felony offense. Mr. Griffin's lawful possession of firearms or ammunition does not make it more or less likely that an objectively reasonable person reading Mr. Griffin's four Gab posts would interpret them as a serious expression of an intent to cause a present or future harm. This is true for the simple reason that an objectively reasonable person reading Mr. Griffin's Gab commentary would have no idea whether he possessed firearms in his home. Nor does their possession establish that Mr. Griffin consciously disregarded a substantial risk that his 4 posts would be perceived as threatening. Critically, it is irrelevant whether "[t]he speaker actually intend[ed] to carry out the threat." *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022) (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). The question is whether Mr. Griffin's statements constituted true threats, not whether he possessed the means or intended to carry them out. His lawful possession of firearms does not answer whether his posts conveyed a serious expression of an intent to cause harm or that they would be perceived as threatening.

*United States v. Jiang*, 2025 WL 419531 (E. D. Va. 2025), is instructive on this point. In *Jiang*, the Court permitted firearms evidence as relevant to the charged offense of obstruction of free exercise of religion involving attempted use of a weapon. *Id.* at *16. But the Court *excluded* evidence of bear spray that the Government had argued was relevant to the interstate threat charge. *Id.* at 17. Noting that the posts at issue "made no reference to bear spray," and "it is not alleged that the posts included pictures of the cannister of bear spray," the bear spray found in the defendant's residence was not relevant because it was not "sufficiently related to the charged offense. *Id.* Similarly, here, Mr. Griffin did not discuss or post pictures of his lawfully owned firearms and related materials. They are irrelevant to the charged threats offense.

Even if relevant to the disputed issues, the extrinsic firearms evidence should be excluded under Rule 403 because any probative value on a disputed issue is outweighed by the risks of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

Further, this evidence should also be excluded under Rule 404(b) because it would impermissibly suggest to the jury that Mr. Griffin possessed a capacity for violence and acted in accordance with that character trait in making posts online. Given the charged references to shootings and attacks, that suggestion is especially prejudicial in this case. The Court should exclude firearms, ammunition, tactical gear, vests, helmets, firearm cases, and related evidence. The Government has not identified a concrete nexus to a permissible purpose relevant to a disputed issue.[2]

### C. Ideological Books and Literature Should be Excluded.

The Government may seek to introduce evidence that Mr. Griffin had the following five books in his apartment:

1. *Mein Kampf* by Adolf Hitler;
2. *The Turner Diaries* by William Luther Pierce (Andrew Macdonald);
3. *The Protocols of the Elders of Zion* by Anonymous;
4. *Imperium: The Philosophy of History and Politics* by Francis Parker Yockey; and
5. *The Coming Civil War* by Tom Kawczynski.

The five books were part of a much larger collection of approximately 100 books that Mr. Griffin kept on a bookshelf in his apartment. The collection included works on a range of subjects, including Paulo Coelho's *The Alchemist*. The Government's focus on these five titles, selected for their inflammatory ideological associations, presents a distorted and incomplete picture of that collection. The fact that Mr. Griffin possessed, or even read, a novel does not establish that its contents informed his four Gab posts or that those posts constituted true threats. Without a particularized connection to a charged statement or another genuinely disputed issue, the books invite the jury to infer criminal intent from the perceived significance of Mr. Griffin's reading material rather than from the communications actually charged.

---

[2] *Supra* n1.

The titles and associations of these works carry obvious inflammatory potential.[3]

Mr. Griffin's possession of these books is not relevant because it does not make it more or less likely that an objectively reasonable person reading Mr. Griffin's four Gab posts would interpret them as a serious expression of an intent to cause a present or future harm. As is true for the firearms, an objectively reasonable person reading Mr. Griffin's Gab commentary would have no idea what types of books he owned in his home. In the § 875(c) trial at issue in *United States v. Myers*, the Fifth Circuit permitted evidence of a defendant's participation in an ideological militia group only because the defendant described his membership directly to a recipient of one of the statements for which he was indicted. 104 F.3d 76, 80 (5th Cir. 1997) (*abrogated on other grounds by Elonis v. United States*, 575 U.S. 723 (2015)). This case does not present what made the defendant's associations relevant in *Myers*.

Even if relevant to the disputed issues, this extrinsic evidence should be excluded under Rule 403 because any probative value on a disputed issue is outweighed by the risks of unfair prejudice, confusing the issues, and misleading the jury, given the obviously inflammatory nature of the materials. It invites the jury to impermissibly convict Mr. Griffin based on his personal beliefs or ideology. *Contra* Dawson, 503 U.S. at 165-67.

This evidence should also be excluded under Rule 404(b) because it is extrinsic to the offense charged and does not pass 404(b) muster. The Government must articulate a permitted non-propensity purpose for admitting such evidence and establish a particularized connection

---

[3] *Mein Kampf*, authored by Adolf Hitler is an autobiographical and political work outlining his nationalist, racist, and antisemitic ideology. *The Turner Diaries*, written under a pseudonym, is a fictional account of white supremacist revolutionary movement seeking to overthrow the U.S. government. The novel depicts acts of terrorism and political violence and has been associated with extremist movements. *The Protocols of the Elders of Zion* is an antisemitic forgery that falsely purports to document a conspiracy by Jewish leaders to control political, financial, and social institutions. Its claims have been thoroughly discredited, although the publication has continued to circulate as antisemitic propaganda. *Imperium* is a political-philosophical work advocating the creation of pan-European fascist political order and advances a postwar vision of European political unity grounded in authoritarian and fascist ideology. *The Coming Civil War* is a political work addressing ideological polarization in the U.S. and predicting the possibility of domestic civil conflict.

between each work and a disputed issue in this prosecution. It has not done so here[4] and cannot do so because Mr. Griffin's private book collection has no bearing on his online posts on Gab. Possession alone does not establish that Griffin read, adopted, or intended to act upon their contents, and the "free trade in ideas"—even those "that the overwhelming majority of people find distasteful or discomforting"—is the hallmark of free speech. *Black*, 538 U.S. 343, 358 (2003) (internal citation omitted0. Indeed, the government cannot even establish whether Mr. Griffin *read* these books. Nor can it establish when he obtained them in relation to the posts at issue.

Otherwise, the principal danger is that the jury will infer Mr. Griffin's criminal intent or dangerousness from the perceived ideological significance of the literature rather than from evidence concerning the four communications charged in the Indictment. The Government must identify the specific item and evidence connecting it to a charged statement or a genuinely disputed issue. Otherwise, the inference runs from possession, to ideology, to supposed violent disposition, to guilt (a forbidden propensity chain).

The Defense recognizes that Counts One and Two contain religious-motivation special findings and that particular evidence of bias may be probative of those findings. The Court's refusal to strike those allegations, however, did not decide whether any particular book is admissible. The charged statements themselves contain religiously charged language; additional literature may be cumulative and substantially more prejudicial than probative. Each book therefore requires separate scrutiny under Rules 401, 403, and 404(b), as applicable.

**D. The Court Should Exclude Evidence Offered to Prove the Special Findings.**

The religious-motivation Special Findings in Counts One and Two do not make otherwise inadmissible evidence of Mr. Griffin's beliefs, associations, or reading material admissible.

[4] *Supra* n1.

However, those allegations do not render every item associated with Mr. Griffin's beliefs, associations, or reading material admissible. The Government must establish the relevance of each item to a genuinely disputed issue, and the Court must independently assess its admissibility under Rules 401, 403, and 404(b), as applicable. Because the charged statements themselves contain religiously charged language, additional ideological literature may be cumulative while creating a substantial danger that the jury will judge Mr. Griffin based on his perceived beliefs rather than the charged communications. The Defense therefore requests that the Court exclude such evidence unless the Government establishes a specific, permissible evidentiary basis for its admission.

**E. The Combined Evidence is Unfairly Prejudicial.**

Presented together, uncharged inflammatory posts, firearms, and extremist literature risk creating a narrative of general dangerousness rather than proof of four specified communications and the required mental state. The Court should assess both individual and cumulative prejudice before permitting this evidence.

**F. Alternatively, the Court Should Require Advance Rulings.**

If categorical exclusion is denied, the Court should direct the Government to identify each item; specify the count, element, or special finding to which it relates; articulate the non-propensity chain of reasoning; establish foundation and any required Rule 404(b) notice; and obtain a ruling before mentioning, displaying, or eliciting the evidence before the jury, including in opening statement.

## II. The Court Should Prohibit Lay Witnesses from Interpreting Gab Posts or Opining that they Constitute True Threats.

The Court should prohibit the Government from eliciting lay testimony from any law enforcement that constitutes an opinion about the meaning or intended meaning of Mr. Griffin's Gab posts. Lay testimony is admissible under Fed. R. Evid. 701 if it is rationally based on the witness's perception and not based on specialized knowledge that is the province of Rule 702. *See United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011). Courts are appropriately "skeptical of lay testimony from law enforcement officers 'interpreting' evidence." *United States v. Dierks*, 978 F.3d 585, 592 (8th Cir. 2020).

A lay witness, especially law enforcement, should not be allowed to supply an authoritative interpretation of Mr. Griffin's posts' meaning, intent, or perceived threatening nature when those are issues for the jury to decide. A lay witness's perception is improper under Rule 701 as it would rely on the officer's specialized knowledge. *See United States v. Peoples*, 50 F.3d 630 (8th Cir. 2001) (ordering a new trial after police officer provided a "narrative gloss" on the case when he testified about hidden meaning of words in a conversation he was not party to). Further, allowing a law enforcement witness to offer a lay opinion about the criminality of any of the Gab posts would constitute a legal conclusion improper under Rule 704 and unduly influence and mislead the jury in contravention of Rule 403. It would also usurp the province of the jury: Because the jury can read the post and assess its context itself, the agent's interpretation would usurp the jury's role while carrying an undue aura of official expertise. *Compare United States v. Grinage*, 390 F.3d 746, 750 (2d Cir. 2004) (agent's interpretation of calls usurped jury's role to decide what to infer from the content of the calls) *with El-Mezain*, 664 F.3d at 513 (improper law enforcement testimony not in error because agent "did not express any opinions as to the defendants' specific

conduct in the case.")

## IV. CONCLUSION

For the foregoing reasons, Mr. Griffin respectfully requests that the Court exclude:

1. Gab Posts Not Charged in the Indictment;
2. Firearms, Ammunition, Tactical Gear, and Related Items;
3. Ideological Books and Literature;
4. The Special Findings in Counts One and Two; and
5. Law Enforcement Opinion Testimony Interpreting Posts as "True Threats."

Alternatively, if the Court declines to exclude any of this evidence, Mr. Griffin requests that the Government be required to identify each item, articulate its specific relevance and permissible purpose, and obtain a ruling outside the jury's presence before referring to or introducing the evidence at trial.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ RUBEN PENA, JR.
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24072983

/s/ HORATIO ALDREDGE
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24064026

*Attorneys for Ryan Thomas Griffin*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of October 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Matt Devlin
United States Attorney's
Office 903 San Jacinto
Blvd., Suite 334
Austin, TX 78701

/s/ RUBEN PENA, JR.

/s/ HORATIO ALDREDGE

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **NO. 1:26-cr-00385-DAE** |
| | § | |
| **RYAN THOMAS GRIFFIN** | § | |

**O R D E R**

On this date, the Court considered Defendant's Motion to Exclude Uncharged Social-Media Posts, Firearms and Related Items, Ideological Literature, Religious-Motivation Special Findings, and Improper Law Enforcement Opinion Testimony. The Court, having considered the motion, is of the opinion that the motion should be granted.

IT IS THEREFORE ORDERED THAT the Defendant's Motion to Exclude Uncharged Social-Media Posts, Firearms and Related Items, Ideological Literature, Religious-Motivation Special Findings, and Improper Law Enforcement Opinion Testimony, is hereby **GRANTED.**

SIGNED this ___________ day of _______________________, 2026.

_______________________________________
DAVID EZRA
UNITED STATES DISTRICT JUDGE